**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| Janine LaVigne, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> -against- <br><br> First Community Bancshares, Inc.; First National Bank Texas; DOES 1-10, inclusive, <br><br> Defendants. | Civil Action No.: 1:15-cv-00934-WJ-LF |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICITON**

Plaintiff, Janine LaVigne, respectfully submits this opposition to the motion by Defendants First Community Bancshares, Inc. and First National Bank Texas dismiss for lack of subject matter jurisdiction.

Defendants assert that Plaintiff lacks "injury in fact" sufficient to confer standing under the recent Supreme Court case *Spokeo, Inc. v. Robins,* ——U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). Defendants are wrong; the actual, repeated, unwanted and unstoppable robocalls to Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act ("TCPA") establish concrete harm for standing purposes as has been widely recognized. *Krakauer v. Dish Network L.L.C.*, 168 F. Supp. 3d 843, 2016 WL 4272367 at \*2, (M.D.N.C. 2016) ("calls made in violation of the [TCPA] are more than bare procedural violations . . . . These calls form concrete injuries because unwanted telemarketing calls are a disruptive and annoying invasion of privacy.") (collecting cases).

For the reasons set forth herein, Plaintiff requests that the motion be denied.  If the Court finds that Plaintiff's complaint is deficient in whole or in part, Plaintiff respectfully requests leave to amend her pleading.

## INTRODUCTION AND BACKGROUND

Plaintiff brings this action under the TCPA which prohibits the use of automatic telephone dialing systems ("ATDS") or prerecorded voices to call cellular telephones.  47 U.S.C. § 227(b)(1)(A).  As an affirmative defense to TCPA liability, the Defendants' may assert "prior express consent" of the called party. *See e.g., King v. Time Warner Cable*, 113 F. Supp. 3d 718, 726 (S.D.N.Y. 2015) (collecting cases).  The consent must be of the actual *called party*, not of the intended recipient. *See King*, 113 F. Supp. 3d at 724 (awarding treble damages of $1,500 per call for defendant's continued calls to the wrong party); *see also In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶ 72-73 (hereinafter the "*2015 FCC Ruling*").

In this case, Defendants knowingly made multiple wrong number phone calls to Plaintiff LaVigne using an automatic telephone dialing system and prerecorded voices.   Plaintiff alleges that in or around July of 2014, FCB began placing telephone calls to her cellular telephone using an ATDS in its attempts to reach a "Belinda Lucero."  Plaintiff demanded, on multiple occasions that the calls stop and instructed Defendants that she was not the individual they were looking for. *Id*. ¶¶ 18, 20.  As Plaintiff testified:

> A.· ··I would tell them, "No, you are calling my cell phone.··My name is Janine
>     LaVigne, I do not know who you are calling.··Please stop."
>
> Q.· ··Okay.··And what happened then?
>
> A.· ··(No answer.)
>
> Q.· ··Did the call end there or was there more discussion?
>
> A.· ··Sometimes the call would end there and other times I would ask them, "Why
>     do you guys repeatedly call me on this?"

(LaVigne Tr. (excerpts attached as Exhibit A) 25:7-16).

Despite the requests, the calls continued. *Id*. ¶ 19.  The calls and her inability to make them stop, upset LaVigne:

> Q.    In June of 2015, you hired a lawyer because you were upset about the fact that you were receiving calls for Belinda Lucero, even though you asked that they stop.  Did I say that correct?
>
> A.    Yes.

(LaVigne Tr. 49:3-7).

On May 20, 2016, Plaintiff filed her Second Amended Class Action Complaint.  (Doc. No. 41). Plaintiff seeks relief for herself and all similarly situated consumers.

## ARGUMENT

**I.    PLAINTIFF HAS CONSTITUTIONAL STANDING UNDER *SPOKEO v. ROBINS***

In *Spokeo*, the Supreme Court addressed the injury-in-fact requirement for Article III standing.  Article III, section 2 of the United States Constitution limits the judicial power of federal courts to cases and controversies. 136 S. Ct. at 1547.  To qualify as a case or controversy, a plaintiff in federal court must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " 136 S. Ct. at 1548.

*Spokeo* did not create new law or a new standing requirement.  *Mey v. Got Warranty, Inc.*, 2016 WL 3645195, at *2 (N.D.W. Va. June 30, 2016) ("*Spokeo* appears to have broken no new ground."); *Krakauer v. Dish Network L.L.C.*, 168 F. Supp. 3d 843 (M.D.N.C. 2016) (*Spokeo* "did not fundamentally change the doctrine of standing or jurisdiction.").  The Supreme Court in

*Spokeo* did, however, set forth a blueprint for determining whether an injury is sufficiently concrete to qualify for purposes of the standing inquiry.

Thus, a concrete injury for standing purposes may be tangible or intangible. *Spokeo*, 136 S. Ct. at 1549 ("'Concrete' is not, however, necessarily synonymous with 'tangible.'"). Where the injury is intangible, *Spokeo* summarizes two approaches to meeting the concreteness and, thus, the standing requirement. First, courts should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *Id*. As the Court noted, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. *See*, *e.g.,* Restatement (First) of Torts §§ 569 (libel), 570 (slander per se) (1938)." *Id*. at 1549.  Thus, an intangible harm that bares a close relationship to a traditionally recognized harm, satisfies the concreteness and injury in fact requirements.

Second, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law . . . ." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Congress "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*.

Separately, an allegation of a violation of a mere "procedural requirement" of a federal statute does not meet the concreteness requirement. *Id*. at 2550 (*Spokeo* uses the example of dissemination of an "incorrect zip code" that does not, on its face, cause any harm).  In such circumstances the proponent must allege some additional harm, beyond the procedural violation itself, to satisfy standing. *Id*. However, even violations of mere procedural rights can be sufficient in certain circumstances where there is a risk of real harm. *Id*. at 1549-50.

### A. UNWANTED PHONE CALLS UNDER THE TCPA CONSTITUTE A CONCRETE INJURY SUFFICIENT TO CREATE STANDING

Post-*Spokeo,* the overwhelming weight of authority establishes that unwanted calls establish concrete injuries and, therefore, Article III standing. *See Krakauer*, 168 F. Supp. 3d 843, 2016 WL 4272367 at *2 ("calls made in violation of the [TCPA] are more than bare procedural violations . . . . These calls form concrete injuries because unwanted telemarketing calls are a disruptive and annoying invasion of privacy."); *Aranda v. Caribbean Cruise Line, Inc.*, 2016 WL 4439935, at *5 (N.D. Ill. Aug. 23, 2016) (finding concrete harm and finding that TCPA "directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA"); *Hewlett v. Consol. World Travel, Inc.*, 2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016); *A.D. v. Credit One Bank, N.A.*, 2016 WL 4417077, at *6 (N.D. Ill. Aug. 19, 2016); *Ung v. Universal Acceptance Corp.*, 2016 WL 4132244, at *2 (D. Minn. Aug. 3, 2016) ("Cases, however, have repeatedly recognized that the receipt of unwanted phone calls constitutes a concrete injury sufficient to create standing under the TCPA."); *Cour v. Life360, Inc.*, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (finding alleged invasion of privacy conferred standing); *Mey*, 2016 WL 3645195, at *3 (finding that "unwanted phone calls cause concrete harm"); *Rogers v. Capital One Bank (USA), N.A.*, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (finding that calls to cell phone numbers in violation of the TCPA establish concrete injuries); *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (finding that the injury caused by robocalls that violate the TCPA is "sufficiently concrete").

This is so because unwanted TCPA calls cause tangible and intangible harms which meet standing requirements.  First, unwanted calls cause myriad tangible harms. *See, e.g. Mey*, 2016 WL 3645195 at *3 (tangible harms include wasting cellular plan minutes, or the depletion of

cellular batteries or the "cost of electricity to recharge the phone."). These are harms suffered by LaVigne. By calling LaVigne, without consent in the first instance and persisting to call over LaVigne's objections, Defendants used, and wasted, the charge on LaVigne's phone. While not an extreme harm, such wastage is an *actual* harm which would not have occurred but for Defendant's unlawful telephone calls.

Second, and of greater import here, unwanted calls cause intangible harms – the invasion of privacy, the unauthorized taking of control of a consumer's cellular device, the wasting to time – which are real, concrete, injuries which ground constitutional standing under *Spokeo*.

As set forth in *Spokeo*, such intangible harms are concrete for Article III purposes if they have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo,* at 1549. The invasion of privacy caused by unwanted calls is such a historically recognized harm. The Fourth Circuit has recognized that the TCPA's prohibitions against robo-calls implicate privacy interests. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir.2013). This tort claim has also often been applied to unwanted telephone calls. *See, e.g.*, *Charvat v. NMP, L.L.C.*, 656 F.3d 440, 452–453 (6th Cir.2011) (Ohio law) (repeated telemarketing calls, especially after do-not-call request, may be invasion of privacy); *St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.*, 249 F.3d 389 (5th Cir. 2001) (Tex. law). More fundamentally, the right to privacy is protected under the Constitution. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L.Ed.2d 508 (2003); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L.Ed.2d 349 (1972); *See also Winston v. Lee*, 470 U.S. 753, 758, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985) (characterizing the Fourth Amendment as protecting expectations of privacy, "the most comprehensive of rights and the right most valued by civilized men").

Further, Congress has identified the harms to privacy from unauthorized calls as a legally cognizable interest and *de facto* injury. *Spokeo,* at 1549 (Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578, 112 S. Ct. 2130, 2145, 119 L. Ed. 2d 351 (1992)). In passing the TCPA, "Congress found that unrestricted telemarketing can be an intrusive invasion of privacy and that many consumers are outraged by the proliferation of intrusive calls to their homes from telemarketers" and the TCPA was enacted to reduce the number of telephone solicitations received by consumers. *FTC v. Mainstream Marketing Servs., Inc.,*345 F.3d 850, 857 (10th Cir.2003); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012) ("'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of privacy.'"); *see also Mey*, 2016 WL 3645195 at *5 ("Congress repeatedly identified the intangible harm of invasion of privacy as one of its primary concerns when it enacted the TCPA.")).

Thus, the TCPA codifies the application of long recognized common law tort of invasion of privacy for a particularly intrusive type of unwanted conduct, unauthorized robocalls. Here, the harm suffered by LaVigne was precisely the harm long recognized in law and the precise harm Congress elevated to a legally cognizable concrete injury. LaVigne was *not* a customer of the Defendants. They had no authorization to call her with autodialing technology and they repeatedly and callously ignored her demands that they cease the calls. Only after LaVigne filed suit did the calls finally stop. Defendants' calls and their failure to stop upset LaVigne, invaded her privacy, the use of her cellular device and wasted her time. These are injuries and harms recognized at common law, constitutional law, in statute and create standing for Article III purposes.

Defendants argue in error that *Spokeo* found that a mere violation of a statute cannot constitute a concrete injury.  This is simply wrong and misreads *Spokeo.*  Where the violation of the statute itself causes either a historical or congressional identified harm, such violation constitutes a concrete harm for standing purposes. As the Court in *Aranda v. Caribbean Cruise Line, Inc.* recently held:

> The Supreme Court's point in *Spokeo* was not that a statutory violation cannot constitute a concrete injury, but rather that where the bare violation of a statute conferring a procedural right could cause a congressionally identified harm or material risk of harm and just as easily could not, it is not sufficient simply to allege that the statute at issue was violated. Failure to ensure the accuracy of a consumer report may result in a harm or material risk of harm the FCRA was intended to curb—loss of employment opportunities, for example, or a decrease in the consumer's creditworthiness. But it may also fail to cause any harm or material risk of harm at all . . . .

> The same cannot be said of the TCPA claims asserted in this case. Unlike the statute at issue in *Spokeo* (and those at issue in *Smith*, *Gubala*, and *Khan*), the TCPA section at issue does not require the adoption of procedures to decrease congressionally-identified risks. Rather, section 227 of the TCPA prohibits making certain kinds of telephonic contact with consumers without first obtaining their consent. It directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA. There is no gap—there are not some kinds of violations of section 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients.

2016 WL 4439935 at *5.   Thus, only a bare violation of a procedural right which does not implicate a historical recognized or congressionally elevated harm (in *Spokeo*, the example of the erroneously reported zip code is offered) requires some allegation of further harm to confer standing.  But that is not the case with the TCPA which "establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive." *Id*. at *6; *see also Mey*, 2016 WL 3645195 at *2 (claims under the TCPA "are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed toward specific consumers."). Here, the actual, repeated, unwanted and unstoppable robocalls were *not* akin to a

misclassification on a credit report.  They were each unlawful and unwanted intrusions on the

Plaintiff's privacy and clear and concrete harms for standing purposes.

Defendants also argue, mistakenly, that Plaintiff does not offer evidence of injury caused

specifically by the use of an ATDS as opposed to a manually dialed call and therefore she lacks

standing.  (Mot. pg. 7-8).  Thus, the theory goes, "the alleged concrete harm was divorced from

the alleged violation of the TCPA." *Id*. pg. 8. This argument fails: "the manner in which the call

was placed has no bearing on the existence of the injury; the use of an autodialer might increase

the possibility of a plaintiff receiving hundreds or thousands of phone calls, thus perhaps

increasing the *extent* of the invasion of [] privacy, but it is the fact of the call (or calls) that

creates the injury sufficient to confer standing." *Ung*, 2016 WL 4132244 at *2.  Defendants'

argument "conflates the *means* through which it (allegedly) violated the TCPA with the *harm*

resulting from that alleged violation." *Id*. (emphasis in original). Even were the Court to find,

ultimately, that there was not even one autodialed call made in violation of the TCPA, such is a

merits determination that does not affect whether there is constitutional harm in the first

instance.[1]

Finally, Defendants' sole citation to a case interpreting and applying *Spokeo* in the TCPA

context is unpersuasive and should not guide the Court here. In *Romero v. Dep't Stores Nat'l

Bank*, 2016 WL 4184099, * *2(S.D. Cal. Aug. 5, 2016) the Court found, without any analysis,

that a violation of the TCPA is a bare procedural violation and, therefore, some additional harm

must be shown to establish standing. This conclusion is an outlier; the TCPA creates substantive,

not mere procedural rights, such that consumers have a right to be free from unwanted autodialed

---

[1] *See Ung*, 2016 WL 4132244 at *3 n.3 ("In other words, even if Universal showed its calls were
in fact manually dialed and that such calls were beyond the TCPA's ambit, that would in no way
preclude the Court from determining Ung has standing to sue.")

calls to their cellular devices. *Krakauer*, 168 F. Supp. 3d 843, 2016 WL 4272367 at *2 ("calls

made in violation of the [TCPA] are more than bare procedural violations."); *Aranda*, 2016 WL

4439935 at *6 (same); *Mey*, 2016 WL 3645195 at *2 (same). Alternatively, *Romero* has been

considered and rejected where the plaintiff "has pleaded sufficient facts to show that the

unwanted calls he received were an annoyance that caused him to waste time." *Juarez v.

Citibank, N.A.*, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016).  Here, as in *Juarez*, Plaintiff

has alleged sufficient facts to show that unwanted calls were an annoyance, that she tried to

make them stop but Defendants ignored her requests, that she wasted her time in trying to get the

Defendants to stop and the calls did not stop until after suit was filed.

      **B. <u>PLAINTIFF HAS STANDING TO RECOVER WILLFULL AND INTENTIONAL</u>**

Defendant's motion to dismiss Plaintiff's second count, sounding in violations of the

TCPA and seeking treble damages under 47 U.S.C. § 227(b)(3), is derivative of Defendant's

motion to dismiss Plaintiff's first count.  Because Plaintiff has standing to pursue her TCPA

claims, the motion to dismiss Plaintiff's second count should be denied.

**II.      <u>TO THE EXTENT THE COURT FINDS PLAINTIFF'S SECOND AMENDED COMPLAINT IS DEFICIENT, PLAINTIFF REQUESTS LEAVE TO FILE A THIRD AMENDED COMPLAINT</u>**

To the extent the Court finds, in whole or in part, that Plaintiff's Second Amended

Complaint does not satisfy Article III under *Spokeo*, Plaintiff requests leave to amend her

pleading. As set forth above, Plaintiff alleges that Defendant placed unwanted and unauthorized

robocalls to her cellular telephone, over her objection, in violation of the TCPA.  As she testified

during deposition, the calls and her inability to make them cease was upsetting.   As the pleading

and the deposition testimony show, the calls invaded Plaintiff's privacy, wasted her time,

occupied her and the usage of her telephone.  However, to the extent that the Court finds that the

Second Amended Complaint is deficient because it does not spell out, in more explicit terms, that the calls to the Plaintiff were annoying, frustrating and or an invasion of her privacy, Plaintiff respectfully requests leave to remedy any such defect.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Dated: September 26, 2016

By:      */s/ Stephen Taylor*
        Stephen Taylor
        Lemberg Law, LLC
        43 Danbury Road
        Wilton, CT 06897
        T.(203) 653-2250 ext.5502
        F.(203) 653-3424

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on September 26, 2016, a copy of the foregoing was filed with the clerk of the Court through the CM/ECF system which sent notice of such filing to the following:

Mark Glenn
Moses, Dunn, Farmer & Tuthill, P.C.
P.O. Box 27047
Albuquerque, New Mexico 87125

William S. Helfand
LEWIS BRISBOIS BISGAARD &SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046


_/s/ Stephen Taylor_
Stephen Taylor