IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANINE LaVIGNE,

    Plaintiff,

vs.                                          Civil No. 1:15-cv-00934-WJ-LF

FIRST COMMUNITY BANCSHARES, INC.
AND FIRST NATIONAL BANK TEXAS,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed September 8, 2016 **(Doc. 48)**. Having reviewed the parties' briefs and the applicable law, the Court finds that Defendants' motion is not well-taken and, therefore, is denied.

### BACKGROUND

This is a putative class action for relief under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. Plaintiff alleges that Defendant First Community Bancshares, Inc., and its subsidiary Defendant First National Bank Texas ("Defendants") violated the TCPA by placing automated telephone calls to her cellular telephone for nonemergency purposes using an "automatic telephone dialing system" ("ATDS") as defined by the TCPA, 47 U.S.C. § 227(a)(1).[1] Plaintiff seeks relief under the TCPA for herself and all others similarly situated. Defendants deny liability. The amended complaint (Doc. 41) includes general allegations

---

[1] Section 227(b) makes it unlawful for a person to make any call, other than a call made for emergency purposes or with prior express consent of the called party, using any automatic telephone dialing system or an artificial or prerecorded voice. . . ."

asserted on behalf of the putative class and asserts Violations of the TCPA (Count I) and Willful Violations of the TCPA (Count II).

## DISCUSSION

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). The case or controversy limitation requires that a plaintiff have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992). The plaintiff bears the burden of establishing the elements of standing. *Defenders of Wildlife*, 504 U.S. at 559–61. In deciding the issue of standing, the Court must accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The question of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. A plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable judicial decision. *Defenders of Wildlife*, 504 U.S. at 559–61. An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Id*. These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id*. Because injury-in-fact is a constitutional requirement, Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547–48 (2016) (citations omitted) ("Article III standing requires a concrete injury even in the context of a statutory violation"). At this stage in the litigation, a plaintiff must plead the elements of

standing in accordance with *Bell Atl. Corp.v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Threadbare recitals of the elements," which are "supported by mere conclusory statements," will no longer suffice at the pleadings stage. *Iqbal*, 559 U.S. at 678. Plaintiff's claims for standing "do not require detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Twombly*, at 555.

The private right of action section of the TCPA provides for a separate statutory $500 damage award for each call that violates its provisions.[1] 47 U.S.C. § 227(b)(3). Each alleged violation of the TCPA is considered a separate claim, meaning that a plaintiff must establish standing (an injury-in-fact) for each individual call. In other words, for each call Plaintiff must establish an injury in fact as if that was the only TCPA violation alleged in the complaint. *Romero v. Department Stores National Bank*, 2016 WL 4184099, at *3 (S.D.Cal., 2016).

**I.      Count I**

      A.      Defendants' Position

Defendants contend that Plaintiff fails to allege any actual harm as a result of Defendants' alleged conduct, and thus she cannot show a concrete and particularized injury as required to demonstrate standing to sue in federal court, either as to Count I or Count II. Defendants appear to recognize that Plaintiff has made a showing of particularized injury, and take issue chiefly with the "concrete" component of an injury. *See* Doc. 48 at 7 (". . . although Defendants' use of an ATDS to call Plaintiff's cell phone may satisfy the "particular" component, it does not automatically satisfy the requirement that the injury be 'concrete'"). Plaintiff alleges that Defendants made automated telephone calls to *her* cell phone, each time without her consent, and the Court finds these allegations sufficiently demonstrate a "particularized" injury. The

Court's analysis therefore focuses on whether Plaintiff has alleged a "concrete" injury for Article III purposes.

Defendant turns to *Spokeo, Inc. v. Robins* in support of its contention that Plaintiff must alleged more than a statutory violation to show injury-in-fact. 136 S.Ct. 1540, 1548 (2016). In *Spokeo,* the Supreme Court addressed Article III standing's "concrete injury" requirement as applied to a plaintiff seeking statutory damages under the Fair Credit Reporting Act ("FCRA"). The court emphasized that an injury-in-fact must be both particularized and concrete, even in the context of a statutory violation. "Particularization" is the requirement that an injury "affect the plaintiff in a personal and individual way" while "concreteness" is "quite different" and requires an injury to be "de facto," that is, it must actually exist. *Id.* at 1548.

In *Spokeo,* the plaintiff brought an action under the FCRA alleging that defendant Spokeo had included false information about him in a consumer report and thus violated the FCRA by failing to "follow reasonable procedures to assure the maximum possible accuracy" of the consumer report. *Id.* at 1542. The district court dismissed plaintiff's complaint, finding that plaintiff had not properly pleaded in injury-in-fact, but the Ninth Circuit reversed, finding that plaintiff had sufficiently alleged an injury-in-fact in the violation of his statutory rights because plaintiff's personal interests in the handling of his credit information were individualized and because his "personal interests in the handling of his credit information are individualized rather than collective." 136 S.Ct. at 1546. The United States Supreme Court did not disagree with the Ninth Circuit's conclusion, but remanded the case back because the Ninth Circuit's analysis had not completed its analysis by considering whether plaintiff had shown whether he had suffered an injury that was "concrete." *Id.* at 1548 ("Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete"). The Supreme Court noted

that such a showing was required because "a violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1549.

In defining the "concrete" part of an injury-in-fact, *Spokeo* did not break any new legal ground for case-and-controversy requirements. *See Krakauer v. Dish Network, L.L.C.,* 168 F.Supp.3d 843 (M.D.N.C. 2016) (*Spokeo* "clarified the meaning of a concrete injury, but it did not fundamentally change the doctrine of standing or jurisdiction"). Plaintiff must sufficiently allege that Defendants' alleged conduct in making unwanted telemarketing calls constitutes a concrete, as well as particularized, harm. *Spokeo* did not attempt to decide whether plaintiff in that case had adequately alleged a concrete harm for standing purposes, but left that to the district court on remand. Thus, the question here is the same question that remained in *Spokeo*, which is whether the particular procedural violations alleged by Plaintiff "entail a degree of risk sufficient to meet the concreteness requirement." 136 S.Ct. at 1550.

In addition to claiming that Plaintiff cannot allege a concrete harm for Article III standing, Defendants also contend that Plaintiff cannot show such harm for each of the phone calls made, relying almost exclusively on a Southern District of California case, *Romero v. Dep't Stores Nat'l Bank,* as an example. 2016 WL 4184099, at *3 (S.D.Cal., 2016). The plaintiff in *Romero* alleged that she suffered substantial emotional distress and physical harm such as headaches, neck and shoulder pain and sleeping issues. In considering whether plaintiff had standing for the TCPA claim, the court determined that the unwanted calls and violation of privacy related to the "particular" component but did not satisfy the "concrete" component of an injury-in-fact, noting it was possible that for many of the calls, the recipient may not even have been aware the calls were made if, for example, her phone was not turned on. *See Romero,* 2016 WL 4184099, at *3 ("A plaintiff cannot have suffered an injury in fact as a result of a phone call

she did know was made." ). The court concluded that plaintiff ultimately failed to demonstrate that any of the defendants' over 290 alleged violations of the TCPA, considered in isolation, actually caused her a concrete harm. *Id.* at *4 ("Plaintiff does not allege or offer any evidence that Defendants' calls caused any damage to, or interfered with her interest in, her cell phone"). The court also noted that plaintiff might have asserted lost time, aggravation or distress as an injury-in-fact, but that she had failed to connect any of these claimed injuries in fact with or each specific TCPA violation.

The *Romero* court also found that plaintiff could not show that defendants' use of an ATDS to make the calls caused plaintiff greater lost time, aggravation and distress than she would have suffered had the calls she answered been dialed manually, which would not have violated the TCPA. The court explained that the "harm" identified by Congress under the TCPA was not use of ATDS to make telemarketing calls, but was the proliferation and quantity of such calls being made. Based on this analysis, the court found that:

> regardless of Congress's reasons for enacting the TCPA, one singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.

*Romero*, 2016 WL 4184099, at *5. Under *Romero,* it appears to be nearly impossible for a plaintiff to allege a private right of action under the TCPA for automated solicitation calls.

B.      Plaintiff's Position

Plaintiff contends that the unwanted calls she received constitute sufficient "concrete" harm for Article III standing, noting that *Spokeo* did not state that a statutory violation could *never* confer Article III standing. Even *Spokeo* recognized that the violation of a procedural right granted by statute "can be sufficient in some circumstances to constitute injury in fact" and that in such a case, "a plaintiff need not allege any *additional* harm beyond the one identified by

6

Congress." 136 S.Ct. at 1544.  The court observed that concreteness may be satisfied by "the risk of real harm" and that "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." 136 S.Ct. at 1549-50.  The court also explained that "concrete" was not "necessarily synonymous with 'tangible.'" *Id.* at 1549.  In determining whether an injury was "concrete," the court considered it "instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Plaintiff contends that the intangible harm alleged in this lawsuit does have a close relationship with traditionally recognized harms, and while the harm may be intangible, it nevertheless actually exists and satisfies the "concrete" component for Article III standing.

There is another reason why Defendants cannot rely on *Spokeo* to argue that Plaintiff cannot show standing for a TCPA violation, and that is because its holding—that a statutory violation was not sufficient in itself to constitute a "concrete" injury, was decided in the context of a violation under the FCRA, which regulates the creation and use of consumer reports.  The Supreme Court recognized that some inaccuracies on a credit report may *not* cause harm or present any material risk of harm, such as an incorrect zip code.  136 S.Ct. at 1550.  *Spokeo* did not consider the TCPA or the harm that the TCPA seeks to protect.

The Court finds that Plaintiff's position is supported by case law and tradition.  The United States Supreme Court has long "recognized that '[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.'" *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (quoting *Carey v. Brown*, 447 U.S. 455, 471 (1980)); *see also Nat'l Fed'n for the Blind v. F.T.C.*, 420 F.3d 331, 339–40 (4th Cir.2005) ("Nat'l Fed'n for the Blind") (finding that residential privacy is

"a substantial government interest that the democratic process is entitled to protect"). In *Maryland v. Universal Elections, Inc.*, the Fourth Circuit recognized that the TCPA "protects residential privacy" by allowing recipients to stop future calls, and that the protection of residential privacy is a "government interest articulated in the legislative history of the TCPA. 729 F.3d 370, 376–77 (4th Cir.2013). Further, in *Mims v. Arrow Financial Services, LLC,* the Supreme Court recognized that in enacting the TCPA, Congress determined that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that automated or prerecorded telephone calls made to private residences "were rightly regarded by recipients as "an invasion of privacy." 132 S.Ct. 740, 745 (2012).[2] Since residential privacy is a recognized government interest, then invasion of that privacy would be regarded as providing a basis for a lawsuit in English or American courts. Taking the analysis further, an invasion of that privacy can be considered a "concrete" harm—a harm that actually exists—and is sufficient to confer standing on an individual who is suing to protect that interest. The holding in *Mims* is not at odds with *Spokeo*, which spelled out the injury-in-fact demands of Article III but contained no discussion about the harms the TCPA was enacted to protect.

In light of the legislative history and case law, Defendants cannot present a tenable argument that that invasion of privacy is an intangible harm that has not traditionally provided a basis for lawsuits in American courts, nor can they refute that the TCPA was enacted to protect that harm. The next issue is key: whether this harm is sufficiently "concrete" for Article III purposes. Plaintiff cites to a number of cases to support her position, and the Court includes a good number of them here to demonstrate where the weight of authority lies.

---

[2] *Mims* also put to rest the question of whether there is federal question jurisdiction over private rights of action under the TCPA, holding that both federal and state courts have concurrent jurisdiction over private suits arising under the TCPA. *See Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740 (2012).

In *Krakauer v. Dish Network L.L.C*., 2016 WL 4272367, at *2 (M.D.N.C., 2016), the district court in the middle district of North Carolina found that calls made in violation of the TCPA "form concrete injuries because unwanted telemarketing calls are a disruptive and annoying invasion of privacy" and that each call "created a material risk of an injury to privacy." The court held that plaintiffs in that case had sufficiently alleged a concrete injury for Article III standing to sue under the TCPA. *Id.* (citing 137 Cong. Rec. 30,821 (1991) ("They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall").

In *Aranda v. Caribbean Cruise Line, Inc*., 2016 WL 4439935, at *5 (N.D. Ill. Aug. 23, 2016), the defendant used an autodialer and an artificial or prerecorded voice to call plaintiffs' cellular and landline phones, offering them free cruise trips in exchange for participation in a political survey. The district court for the Northern District of Illinois found that plaintiff had suffered a concrete harm and that the TCPA "directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA. The court distinguished between the TCPA and the FCRA statute which was at issue in *Spokeo,* noting (as *Spokeo* did) that a plaintiff cannot allege a "bare procedural statutory violation" to show standing where that violation could "just as easily" *not* result in a harm or risk of harm. 2016 WL 4439935 at *5.  The court concluded that the TCPA contains a congressionally-identified concrete injury that gives rise to standing to sue based on the mere violation of the statute:

> . . . section 227 establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive. Both history and the judgment of Congress suggest that **violation of this substantive right is sufficient to constitute a concrete,** *de facto* **injury.**
>
> . . .

> In contrast to statutes that impose obligations regarding how one manages data, keeps records, or verifies information, section 227 of the TCPA **directly prohibits** a person from taking actions directed at consumers who will be actively touched by that person's conduct. It does not matter whether plaintiffs lack additional tangible harms like loss of cell phone battery life, actual annoyance, and financial losses; **Congress has identified that such unsolicited telephonic contact constitutes an intangible, concrete harm, and plaintiffs have alleged such concrete harms that they, themselves suffered**. Their injuries are concrete and particularized, traceable to defendants' conduct, and judicially redressable.

*Aranda v. Caribbean Cruise Line, Inc.*, 2016 WL 4439935, at *5–6 (emphasis added).

Unlike the FCRA, the TCPA directly forbids certain kinds of telephonic contact with consumers without first obtaining their consent. Unlike the FCRA, there is no "gap" where some violations of the TCPA result in the harm Congress intended to curb, and some to not. Rather it is the "receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients." *Id.,* at 5.

In *Booth v. Appstack, Inc*., the district court in the Western District of Washington conducted a similar comparison between violations asserted under the FCRA and under the TCPA. 2016 WL 3030256 (W.D.Wash., May 25, 2016. The court noted that in *Spokeo,* the Supreme Court had expressed no opinion on whether the procedural FCRA violation in that case was a "concrete injury" sufficient to confer Article III standing on the plaintiff because some statutory violations could be sufficiently procedural or technical to fail the "concrete injury" requirement,  The court in *Booth* found that in contrast to the injury asserted in *Spokeo*, which was "arguably merely procedural and thus non-concrete," the TCPA violations alleged in the case at bar were sufficiently concrete to confer standing because if proven, they "required [p]laintiffs to waste time answering or otherwise addressing widespread robocalls." 2016 WL 3030256, at *5.

In *Mey v. Got Warranty, Inc*., the district court for the Northern District of West Virginia, the court found that unwanted telephone calls cause concrete harm, both tangible and intangible,

10

for purposes of the concreteness requirement for Article III injury-in-fact as an element for Article III jurisdiction:

> For consumers with prepaid cell phones or limited-minute plans, unwanted calls cause direct, concrete, monetary injury by depleting limited minutes that the consumer has paid for or by causing the consumer to incur charges for calls. In addition, all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm. While certainly small, the cost is real, and the cumulative effect could be consequential.

2016 WL 3645195, at *3 (N.D.W.Va., 2016). Defendant argues that Plaintiff cannot show concrete injury for *each* telephone call, but the problem with this argument is that Article III requirements for an injury-in-fact do not contain a "minimum" cost or harm threshold. Regardless of how small the harm is, it is actual and it is real. In *Mey,* the court described the intangible injuries that result from these calls as (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction. 2016 WL 3645195, at *3.

The list goes on, with each finding that the bare statutory violation of the TCPA constitutes sufficient "concrete" injury for Article III standing. *See Hewlett v. Consol. World Travel, Inc.*, 2016, WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) (noting that courts "have consistently held that allegations of nuisance and invasion of privacy in TCPA actions are sufficient to state a concrete injury under Article III" where defendant used ATDS to call plaintiff without her consent in an attempt to sell her a free cruise) (citing cases); *Ung v. Universal Acceptance Corporation*, 2016 WL 4132244, at *2 (D.Minn., 2016) ("Cases . . . have repeatedly recognized that the receipt of unwanted phone calls constitutes a concrete injury sufficient to create standing under the TCPA") (citing cases); *Rogers v. Capital One Bank (USA), N.A.*, 2016 WL 3162592 (N.D.Ga., 2016) (violation of the TCPA is a concrete injury) (citing *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris*, D.D.S., P.A., 781 F.3d 1245, 1251 (11th

Cir. 2015) (recipient of unsolicited fax advertisement for dental practice alleged a concrete and personalized injury sufficient to satisfy Article III injury requirement in the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data).

    C.    <u>Plaintiff's Position is Legally Supportable</u>

The Court finds that a violation of the TCPA constitutes a "concrete" harm for an Article III injury-in-fact requirement. Most courts that have addressed this issue have sided with Plaintiff. Defendants have not offered any legal basis to find otherwise. They rely on what the Court considers to be an incongruous and overbroad interpretation of Spokeo because that case addressed an entirely different statute. As discussed above, *Spokeo* recognized that a procedural violation of the FCRA did not *necessarily* result in a harm which the statute seeks to prevent. In contrast, the TCPA contains a congressionally-identified concrete injury in its language prohibiting certain kinds of telephone calls. This substantive prohibition sets it apart from the few cases which have determined that concrete injuries cannot result from bare statutory violations. *See Mey v. Got Warranty, Inc.*, 2016 WL 3645195, at *2 (N.D.W.Va., 2016) (claims under the TCPA are not based on "bare procedural" rights, but rather on substantive prohibitions of actions directed toward specific consumers); *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D.Wash., 2016) (distinguishing between substantive statutory violations of TCPA and procedural violations of the FCRA).

Defendants have also offered *Romero,* which is hardly convincing. Under its rather draconian analysis, a plaintiff would find it almost impossible to allege a harm as a result of these robocalls. Worse, the case ignores the existence of intangible harms that have been recognized in the legislative history and in the case law. The Court agrees with Plaintiff that

*Romero* is an outlier in holding that a violation of the TCPA is a bare *procedural* violation and that some additional harm must be shown to establish standing.  *Romero* also had an inexplicable twist.  In its injury-in-fact requirement, the court required that the injury alleged as a result of a pre-recorded call must be shown to be different and distinct from any injury that would have resulted from a manually dialed call.  Defendants have taken up this line of argument as well in their brief, arguing that Plaintiff lacks standing because she does not offer evidence of injury caused specifically by the use of an ATDS as opposed to a manually dialed call.  Doc. 48 at 7-8.

Plaintiff sizes up Defendant's position by describing it as an argument which "conflates the *means* through which it (allegedly) violated the TCPA with the *harm* resulting from that alleged violation."  *Id.* (emphasis in original).  The Court agrees.  The TCPA codifies the application of a long-recognized common law tort of invasion of privacy (and the Court would add the tort of nuisance as well)[3] for a particularly intrusive type of unwanted conduct: unauthorized "robocalls."  There is no legal rationale for this argument under an Article III analysis: either a plaintiff shows a concrete and particularized harm for Article III standing because of telemarketing calls, or she does not.  As one case stated:

> the manner in which the call was placed has no bearing on the existence of the injury; the use of an autodialer might increase the possibility of a plaintiff receiving hundreds or thousands of phone calls, thus perhaps increasing the extent of the invasion of [] privacy, but **it is the fact of the call (or calls) that creates the injury sufficient to confer standing**.

---

[3] Private nuisance is described as an invasion of "the private use and enjoyment of land or an invasion "that affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public." *State ex rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque*, 889 P.2d 185, 198, 119 N.M. 150, 163 (N.M.,1994).

13

*Ung,* 2016 WL 4132244 at *2.[4]  In *Ung,* the court pointed out that "even if [defendant] showed its calls were in fact manually dialed and that such calls were beyond the TCPA's ambit that would in no way preclude the Court from determining Ung has standing to sue."

Defendants also contend that Plaintiff cannot show the calls were in fact disruptive, since she did not answer most of the calls placed to her during normal business hours, and because the calls she did answer were very brief.  In the partial transcript of her deposition, Plaintiff claimed the number of calls was between 195 and 265, and that she answered "probably about 70 percent of the calls."  Doc. 53-1 at 4.  The number of calls Plaintiff answered, and the times these calls were made are issues that should be resolved on summary judgment or at trial, based on the available evidence, but are not appropriate for the threshold stage of jurisdictional dismissal based on standing.

Accordingly, the Court finds that Plaintiff has established both a "particularized" and "concrete" injury for standing under Article III as to Count I.

## II.     Count II

In Count II, Plaintiff asserts willful violations of the TCPA.  Defendant argues that because Plaintiff lacks standing to assert a substantive violation of the TCPA, then she cannot have standing to assert that the violation was committed willfully or knowingly.  Doc. 48 at 18.  The Court's foregoing analysis and conclusion requires a denial of Defendant's request to dismiss Count II as well, since whether Defendants' conduct was willful under the TCPA involves factual matters to be resolved by future motions or at trial.  The Court therefore finds

---

[4]  In *Ung,* the court pointed out that "even if [defendant] showed its calls were in fact manually dialed and that such calls were beyond the TCPA's ambit that would in no way preclude the Court from determining Ung has standing to sue").

that Plaintiff has established both a "particularized" and "concrete" injury for standing under Article III as to Count I.

### III.  Amendment of Complaint is Unnecessary

Plaintiff seeks to amend the Amended Complaint in the event the Court finds that it does not satisfy Article III requirements under *Spokeo*. Doc. 52 at 10. Plaintiff has alleged that Defendants violated the TCPA, describing the many calls that were made to her cellular phone, without her permission and for non-emergency purposes. *See,e.g.,*Doc. 41, ¶¶10-26. Amendment is unnecessary, in light of the Court's discussion above and findings that bare statutory violations of the TCPA satisfy the "concrete" component for Article III standing.

Although not necessary to establish standing, Plaintiff asserts that calls in violation of the TCPA are a "greater nuisance and invasion of privacy than live solicitation calls. . . ." ¶3.  These harms are described in the statute's legislative history and have been reinforced by case law which recognizes that harm results when the statute's direct prohibition on certain kinds of telephone calls is flouted by telemarketers. *See, e.g., Krakauer v. Dish Network,* 168 F.Supp.3d 843 (recognizing concrete injuries without specific allegations of injury because "unwanted telemarketing calls are a disruptive and annoying invasion of privacy"); *Mey,* 2016 WL 3645195 ("unwanted calls cause direct, concrete" injury; depletion of cell phone's battery and cost of electricity to recharge the phone is also a tangible harm, regardless of how small); *Aranda v. Caribbean Cruise Line, Inc*., 2016 WL 4439935, at *5–6 (unsolicited telemarketing calls "by their nature invade the privacy and disturb the solitude of their recipients").

**THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction **(Doc. 48)** is hereby DENIED for reasons discussed in the above Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE