IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANINE LAVIGNE,

    Plaintiff,

vs.                                                                      Civil No. 1:15-cv-00934-WJ/LF

FIRST COMMUNITY BANCSHARES, INC.
and FIRST NATIONAL BANK TEXAS,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO CERTIFY AND DENYING
## DEFENDANTS' MOTION TO STRIKE AFFIDAVIT

THIS MATTER comes before the Court upon Plaintiff's Motion to Certify Class, filed March 17, 2017 **(Doc. 74)**, and Defendants' Motion to Strike Declaration of Plaintiff's Fact Witness Anya Verkhovskaya, filed November 7, 2017 **(Doc. 103)**. Having reviewed the parties' briefs and the applicable law, the Court finds that Plaintiff's Motion to Certify Class is well-taken, and therefore, is **GRANTED**. Defendant's Motion to Strike Affidavit is **DENIED**.

### BACKGROUND

This is a putative class action for relief under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. Plaintiff alleges that Defendant First Community Bancshares, Inc., and its subsidiary Defendant First National Bank Texas ("Defendants") violated the TCPA by placing telephone calls to her cellular telephone for nonemergency purposes, without her consent, using an "automatic telephone dialing system" ("ATDS") as defined by the TCPA, 47

U.S.C. § 227(a)(1).[1] Plaintiff seeks relief under the TCPA for herself and all others similarly situated. Defendants deny liability. The amended complaint **(Doc. 41)** includes general allegations asserted on behalf of the putative class and asserts Violations of the TCPA (Count I) and Willful Violations of the TCPA (Count II).

Defendant First National Bank of Texas is a retail bank with locations in Texas, Arizona and Mexico. It is a subsidiary of Defendant First Community Bancshares, Inc. Defendants contracted with GC Services to place calls to their customers with overdrafted bank accounts. Plaintiff alleges that, after she acquired her cell phone number ending -4951, Defendants repeatedly called her using an auto-dialer, in reference to an over-drafted bank account, despite the fact that she repeatedly told Defendants they have the wrong person. Plaintiff was not a customer of the Defendants. Plaintiff alleges that, after seeing GC Service's number on caller ID, she called in an explained that Defendants were calling the wrong person. Apparently, GC Services noted in their logs that the number they used to call Plaintiff was a "Bad/Wrong Number", but the calls persisted. GC Services' call logs are returned to Defendants each day. Plaintiff alleges that Defendants did not consider the "Bad/Wrong Number" entries, but simply resubmitted her phone number to GC Services for use the next day. Thus, it is unclear whether Defendants and GC Services had any system in place to maintain compliance with the TCPA.

Customers of the Defendants sign deposit agreements, and consent to receive calls from Defendants placed through an automatic dialer.

Plaintiff seeks to certify, pursuant to Fed. R. Civ. P. 23(b)(3), a class of:

---

[1] Section 227(b) makes it unlawful for a person to make any call, other than a call made for emergency purposes or with prior express consent of the called party, using any automatic telephone dialing system or an artificial or prerecorded voice. . . ."

> All persons who, since November 11, 2012, (1) called First National Bank Texas and First Community Bancshares, Inc., through their vendor GC services, and such call was coded "Bad/Wrong Number" and (2) were subsequently called again by First National Bank Texas and First Community Bancshares, Inc., through their vendor GC Services with an automatic telephone dialing system and such call was again coded as "Bad/Wrong Number."

*See* **Doc. 74.** In her reply, Plaintiff amended her class as follows (modifications in bold):

> All persons who, since November 11, 2012, (1) called First National Bank Texas and First Community Bancshares, Inc., through their vendor GC services, and such call was coded "Bad/Wrong Number" and (2) were subsequently called again by First National Bank Texas and First Community Bancshares, Inc., **on their cellular telephones** through their vendor GC Services with an automatic telephone dialing system and such call was again coded as "Bad/Wrong Number."

**Doc. 108**.[2] Plaintiff seeks to certify a class of individuals they claim called Defendant to say that Defendant was calling the wrong number, but whom Defendants continued to call anyway, and were again coded as "Bad/Wrong Number." Plaintiff intends that the class will only include non-customers, and proposes to weed-out any customers form the class by reference to Defendants' business records (i.e., deposit agreements), or through affidavits from class members averring that they were not customers of the Defendants.

Mark Schordock, a GC Services Representative, testified that an *incoming* call coded as "Bad/Wrong Number" means that "somebody's saying it's not them that we're dialing." Tr., Mark Schordock, p. 51, ll. 17-18. He also testified that it could mean that "the person doesn't

---

[2] Plaintiff may amend the class definition, because the new class definition is narrower than the originally proposed definition. *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015), *citing Abdeljalil v. Gen. Elec. Capital Corp.,* 306 F.R.D. 303 (S.D.Cal.2015) (permitting plaintiff to propose a new class definition in his motion for class certification when the new definition was "simply a narrower version of the class definition presented in the [amended complaint]"). Here, Plaintiff narrowed the class definition by limiting it to those called on their cellphones. Moreover, the Court allowed Defendants to respond to the modified class definition in a surreply. Moreover, Defendants were not prejudiced by this modification, because it appears both parties operated under het assumption that the class included cell phone users. *See* **Doc. 130.**

3

live there anymore… it could be giving you a different number to reach customer at…there could be a lot of reasons. But, basically, they're saying they got a call from – and who we're trying to reach is not there." Much later, in an affidavit, Mr. Schordock listed numerous reasons why a call could be coded as "Bad/Wrong Number", other than that the called party was calling back to give express notice that they were not customers.

This class certification litigation has been burdened by four separate rounds of briefing, and an eight month delay for additional discovery. The surreply was filed on April 23, 2018, and this matter is now ready for ruling.

## DISCUSSION

To certify a class under Fed. R. Civ. P. 23, Plaintiff bears the burden of showing that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Plaintiff must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1) –(3).

The Court must engage in a "rigorous analysis of whether the threshold requirements of Rule 23(a) are satisfied." *Shook v. El Paso County*, 3865 F.3d 963, 968 (10th Cir. 2004); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,* 725 F.3d 1213, 1218 (10th Cir. 2013). This is not a pleading standard, and Plaintiff must "affirmatively demonstrate" her compliance with the rules. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011); *XTO Energy, Inc.,* 725 F.3d at 1218 (plaintiff has "strict burden of proof"). "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations." *Monreal v. Potter,* 367 F.3d 1224,

4

1238 (10th Cir.2004) (internal quotation marks omitted), *quoted in Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006).

I. **Plaintiff Satisfied the Requirements of Fed. R. Civ. P. 23(a).**

    A.    Numerosity.

Fed. R. Civ. P. 23(a)(1) requires that a "class is so numerous that joinder of all members is impracticable. There is "no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir.1978), *quoted in Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

Although Plaintiff bears the burden of establishing numerosity, she need not establish any precise number of class members at this stage, or have already identified who is part of the class. *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214–15 (10th Cir. 2014); *Neiberger v. Hawkins*, 208 F.R. D. 301, 313 (D. Colo. 2002) ("the exact number of potential members need not be shown"); *See also Abdeljalili*, 306 F.R.D. 303 (finding numerosity satisfied despite no list of class members); *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (court was reasonable in inferring under circumstances that there would be substantial number of class members); *See also In Re Alcoholic Bevereages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y.1982) ("The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class."), *cited in Stern v. DoCircle, Inc.*, 2014 WL 486262, at *4 (C.D. Cal. Jan. 29, 2014).

Plaintiff submitted an affidavit by Ms. Verkhovskya's, that included an analysis of Defendants' own call logs to identify 38,125 separate phone numbers (both landline and cell phone) that called in, were coded as "Bad/Wrong Number", and were subsequently called again by Defendants and coded as "Bad/Wrong Number." Ms. Verkhovskya then used data from Nexxa, a third party, to identify that 37,219 of these numbers belonged to cell phones.

Defendants filed a motion to strike the affidavit of Ms. Verkhovskaya. **(Doc. 103).** Initially, the Court doubts that Ms. Verkhovskaya needs to be an expert to perform the limited tabulations in the affidavit.[3] *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 1806583, at *5 (N.D. Cal. 2017), *amended* 2018 WL 558844 (N.D. Cal. 2018); *see also West v. California Servs. Bureau, Inc.,* 323 F.R.D. 295, 305 (N.D. Cal. 2017), *citing Villanueva v. Liberty Acquisitions Svc., LLC*, 319 F.R.D. 307, 315 (D. Or. 2017) (relying on data analysis conducted by attorney and attorney's staff to establish numerosity and noting that "[d]istrict courts in the Ninth Circuit have relied on similar evidence as adequate"). Defendants also argue that the Nexxa data relied on by Ms. Verkhovskya is hearsay, and that Ms. Verkhovskya's conversion of PDF records provided by Defendants to Excel is error-ridden.

Even setting aside the sections of the Ms. Verkhovskya's affidavit tainted by alleged hearsay, Plaintiff has established numerosity. Even if only a fraction of the approximately 38,125 are in fact class members, the numerosity requirement here is readily satisfied. *West v. California Servs. Bureau, Inc.*, 2017 WL 6316823, at *7 (N.D. Cal. 2017), *Munday v. Navy Fed. Credit Union, 2016 WL 7655807*, at *3 (C.D. Cal. 2016) ("Because joinder of even a fraction of these individuals is impracticable, Rule 23(a)'s numerosity requirement is readily satisfied.").

---

[3] This ruling is strictly limited to her affidavit used to establish numerosity for this class certification motion. The Court does not address whether Ms. Verkhovskaya needs to be, or can be, qualified as an expert for any other matter.

B.  Commonality.

Plaintiff must also show that "there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 131 S.Ct. at 2551. However, Plaintiff need only show a *single* issue of law or fact that is common to the class and is substantially related to the resolution of the litigation. *Realmonte v. Reeves,* 168 F.3d 1280, 1285 (10th Cir. 1999). "For a common question of law to exist, the putative class must share a discrete legal question of some kind." *J.B. ex rel Hart*, 186 F.3d at 1289. "What matters to class certification ... is ... the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Walmart*, 564 U.S. at 350, 131 S.Ct. at 2551. There must be a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "[E]ven a single common question will do." *Wal–Mart,* 131 S.Ct. at 2556; *see also Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014).

Plaintiff identifies a number of common questions of law or fact:

- whether the Aspect Unified IP used to call all class member is an automatic telephone dialing system;
- Whether Defendants were on notice that they were directing their vendor to call persons without those persons' consent, and whether Defendants conduct was knowing and/or willful; and
- whether the class suffered the same injury, receipt of call in violation of the TCPA.

The Court agrees that these are issues common to all class members and apt to drive resolution of the litigation, and are sufficient by themselves to establish commonality. Moreover, Plaintiff has devised a methodology which appears to (1) weed out customers of the bank (those who

consented to being called), and (2) identifies individuals who called in and were coded as "Bad/Wrong Number", yet were called again.

Defendants argue that commonality is not satisfied, because there will be individualized issues of consent, such as whether Defendants were expressly notified that the called numbers had been reassigned, or that the wrong people were being called. The Court disagrees. Because of the narrowly tailored class definition, the factual situation for all class members appears to be the same. The same evidence, Defendants' own records, will provide common answers to legal and factual questions related to consent issues for all class members. *See Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 309 (S.D. Cal. 2015) (In identical "wrong number" case, "the factual situation for all the class members here is the same, that is, defendant called third parties on their cellular telephone number via an ATDS and/or prerecorded voice without prior express consent after defendant was on notice that it was calling a third party."); *see Stern v. DoCircle, Inc.*, 2014 WL 486262, at *4 (C.D. Cal. 2014) ("What steps Defendant took to comply with TCPA, and whether it can be held to have negligently or willfully violated the TCPA when it took those steps, are factual and legal issues common to all class members."); *See also Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *4 (C.D. Cal. 2016) ("Here, the crux of this action turns on whether, in fact, Navy Federal coded certain telephone numbers as a "wrong number," but, nevertheless, continued to call "a portion of the coded 'wrong numbers' " as a result of "a 'gap' in Navy Federal's system logic." An affirmative determination on this issue would generate [a] common answer apt to drive the resolution of the litigation."). As explained below, these cases have found that commonality is satisfied even though defendants argued that phone numbers "marked 'wrong number' in defendant's call log databases may not have actually been a wrong number." *See also West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 301–02

(N.D. Cal. 2017), *quoting Johnson v. Navient Solutions, Inc.,* 315 F.R.D. 501, 503 (S.D. Ind. 2016).

    C.    <u>Typicality</u>.

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). The commonality and typicality requirements tend to merge. *Wal-Mart,* 131 S.Ct. at 2551 n. 5. "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality. Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010) (internal citations omitted). Here, the claims of Plaintiff and class member are based on the same legal theory. Whether there was a lack of consent, and liability under the TCPA, will be determined on a class-wide basis.

Moreover, both the Plaintiff and putative class members are in the same factual situation. The proposed class is narrowly tailored to include individuals who called in to GC services to report that Defendants were calling the wrong person and coded as "Bad/Wrong Number", but were subsequently called again by Defendant and coded as "Bad/Wrong Number." Plaintiff has agreed to narrow the class to only include non-customers. The proposed class is therefore most likely factually identical to Plaintiff. *See, e.g., Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *4 (C.D. Cal. 2016) (typicality satisfied where "[Plaintiff]—like members of the putative class—"was called on his cellular telephone by Navy Federal, with an [automatic telephone dialing system], between October 9, 2011 through the present and the call was coded as a 'wrong number.'"). For these reasons and the reasons pertaining commonality, the Court concludes the typicality requirement is satisfied.

D.      Representation.

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of these two questions determines legal adequacy: 1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187 (10th Cir. 2002), *quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendants have not contested adequacy of representation. There appears to be no conflicts of interest, and it appears that Plaintiff and her counsel will vigorously prosecute the action on behalf of the class. Plaintiff shares the interest of the putative class members. The Court finds that Plaintiff and her counsel will fairly and adequately protect the interests of the class.

Moreover, in considering the factors under Fed. R. Civ. P. 23(g)(1)(c), the Court concludes that Lemberg Law, LLC (Stephen Taylor) should be appointed as class counsel. *See* **Doc. 74-3 (Taylor Decl.)**. Lemberg Law has significant experience in class actions and knowledge of the applicable laws. Lemberg Law has successfully pursued other class actions, and appears to have the resources to represent the class.

## II.     Fed. R. Civ. P. 23(b) and Ascertainable Class.

Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(3). Certification under that subsection is proper if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added). The Court may consider:

>(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Defendants argue that the class is not ascertainable, and that individual issues predominate over common issues. Since Defendants' arguments on both points are substantially similar, the Court will consider the analysis of these issues together. Moreover, it appears that the Tenth Circuit considers ascertainability as part of the Fed. R. Civ. P. 23(b)(3) inquiry. *See Shook v. El Paso Cty.,* 386 F.3d 963, 972 (10th Cir. 2004) (identifiability and manageability of class are part of Rule 23(b)(3)), a*nd* Fed. R. Civ. P. 23(b)(3)(D) (court must consider "the likely difficulties of managing a class action").

    A.    <u>Predominance</u>.

Rule 23(b)(3) requires a "rigorous analysis" into whether common questions predominate over individual ones. *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013). The predominance inquiry is "far more demanding than Rule 23(a)'s commonality requirement." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013). "Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive. Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co.,*

*LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (internal citations and quotation marks omitted).

B. <u>Ascertainable Class</u>.

Defendants argue that the proposed class fails to satisfy the implied requirement that a class be ascertainable. Although not expressly a requirement of Rule 23, most courts imply a requirement that a class definition "be precise, objective, and presently ascertainable." *In re: Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *1 (D. Kan. 2016) (internal quotation marks omitted).[4]

For a class definition to be ascertainable, identifying class members must be administratively feasible. *Davoll v. Webb*, 194 F.3d 1116, 1146–47 (10th Cir. 1999). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1111–12 (D. Colo. 2015), *quoting Manual for Complex Litigation (Fourth) §* 21, 222 (2004). Ascertainability requires that "[t]he method of determining whether someone is in the class must be administratively feasible" and must not depend on "individualized fact-finding or mini-trials." *Id., quoting Donaca v. Dish Network, LLC.,* 303 F.R.D. 390, 396–97 (D.Colo. 2014); *see also Leyse v. Lifetime Entm't Servs., LLC*, 679 F. App'x 44, 47 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 637 (2018) ("A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case.").

---

[4] Some courts hold that a class may only be ascertainable if it is apparent at the class certification stage that identifying the members of a class is administratively feasible. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 168 (3d Cir. 2015). Other courts hold that whether a class is ascertainable depends on "the adequacy of the class definition itself," not "whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). These courts hold that the class cannot be too vague or subjective. *Id.* The Tenth Circuit has not specifically weighed in on this circuit split on the meaning of "ascertainable", but otherwise requires that identifying members of a class be administratively feasible. *Davoll v. Webb*, 194 F.3d 1116, 1146–47 (10th Cir. 1999).

C. Analysis of Predominance and Ascertainability.

Plaintiff proposes that the class includes all individuals, according to Defendants records, who (1) called in to Defendants and were coded as "Bad/Wrong Number", and were (2) subsequently called again by Defendants, and were coded as "Bad/Wrong Number." Plaintiff proposes to weed out any customers either by reference to (1) affidavits from potential class members averring they are not customers of the Defendants, or (2) Defendants' deposit agreements. By excluding Defendants' customers, Plaintiff excludes any individuals who could have consented to Defendants' calls. The Court concludes that the class is ascertainable, as class members can be readily identified by objective criteria based on Defendants' business records.[5]

Moreover, the Court concludes that common issues predominate, and Plaintiff's proposed methodology eliminates individualized inquiries or mini-trials. The class members appear to be in the same factual situation, and the class is likely to fail or succeed on the merits (such as whether class members expressly revoked consent) on the same common evidence, i.e., Defendants' business records.

Defendants argue that the class cannot be ascertained, because Plaintiff has no way to weed out customers from its class. As explained above, Plaintiff has devised a methodology to weed out Defendants' customers. Defendants did not object to this methodology, and

---

[5] Relying on affidavits submitted by class members is not a *per se* bar to class certification, especially where potential class members are likely to know whether they were ever a customer of the Defendants. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 472 (6th Cir. 2017); *see also Rhodes v. Nat'l Collection Sys.,* Inc., 2016 WL 7377125, at *2 (D. Colo. Dec. 16, 2016) (at the notice stage "requiring any putative class member to submit a verified claim averring to his or her membership in the class, and cross-referencing those claims to defendant's records appears to this court to be an eminently reasonable and workable process. Defendant certainly will be afforded an opportunity to challenge any claims it deems suspect.") (citing *Mullins v. Direct Digital, LLC*, 795 F 3d 654 (7th Cir. 2015)); *Patten v. Vertical Fitness Grp., LLC*, 2013 WL 12069031, at *6 (S.D. Cal. Nov. 8, 2013) ("The Court fails to see how that question [whether membership agreements showed consent by a class member] requires anything other than rifling through a stack of membership agreements—five to ten seconds on each, perhaps—and pulling those that have the relevant notation . . .").

Defendants have provided no evidence that Plaintiff's proposed class *actually* consists of bank customers. The fact that the class may inadvertently include some customers that consented is not fatal to the predominance inquiry, especially since they can be weeded out. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125–26 (6th Cir. 2016) ("Even where defendants point to some evidence that a defense will indeed apply to some class members, which is more than Top Flite did here, courts routinely grant certification because "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class."), *cert. denied*, 138 S. Ct. 80, 199 L. Ed. 2d 25 (2017), *citing Smilow v. Sw. Bell. Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) ("As the First Circuit has recognized, moreover, if evidence later shows that a defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether.").

Defendants also argue that this litigation will devolve into individualized issues of consent, because there is no way to tell whether any of the customers who called in gave express notice to Defendants that (1) they were calling the wrong person, or that (2) the number had been reassigned. They assert that a call could be coded "Bad/Wrong Number" for many reasons unrelated to the fact that a third party was called. Initially, a number of courts have rejected this theory in "Wrong Number" cases, under similar factual circumstances, at the class certification stage. *See Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016); *Munday*, 2016 WL 7655807, at *4; *Abdeljalil*, 306 F.R.D. at 309 (rejecting argument that class is not ascertainable because notation in account for "bad number" does not necessarily mean that number belonged to non-account holder); *West v. California Servs. Bureau, Inc.*, 2017 WL 6316823, at *4 (N.D. Cal. 2017) ("Defendant does not persuade. As an initial matter, several

district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number.'").

Moreover, Defendants' theory conflicts with their representatives' own testimony. **Schordock Tr. at 51:9-18** ("Bad/Wrong Number" code on an inbound call means that "somebody's saying it's not them that we're dialing."). Most of the alternative reasons for coding a call as "Bad/Wrong Number" apply to *customers* or to *outbound calls* – not here. Thus, whether a call log record for an *inbound* call of "Bad/Wrong Number" is sufficient to impart express notice to Defendants that they were calling the wrong party is a class-wide issue.

Defendants' assertion that *non-customers called in* for some reason other than notifying Defendants that they were calling the wrong person defies common sense. In any event, Defendants' objections do not show any individualized issues. Either this evidence will or not will be sufficient to establish liability on a class-wide basis. There is unlikely to be much, if any, individualized evidence. *See, e.g., Stern v. DoCircle, Inc.*, 2014 WL 486262, at *3 (C.D. Cal. Jan. 29, 2014) ("But this is an argument that Plaintiff will lose on the merits, not an argument as to whether the class definition is administratively feasible."). Practically, for these types of TCPA violations, liability is likely only to be established by business records. The issue of whether Defendants received express notice that the number has been reassigned, but continued to call class members anyway, will be resolved based on legal theories and evidence common to all class members.

Finally, Defendants argue that the class is overbroad, because it includes individuals who consented to being called, i.e., bank customers. As explained above, Plaintiff's proposed method is to exclude customers either by (1) affidavit or attestation by the proposed customer, or (2)

cross-reference with Defendants' deposit agreements. The Court finds this methodology workable, and Defendants have not objected to it or explained why it would not work.

In sum, Defendants' consent defense applies to whether liability can be established on a class-wide basis, and does not create individualized issues nor make this class action administratively infeasible. The Court concludes that the class is ascertainable and that common issues predominate over individual issues.

D.  Superiority.

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem,* 521 U.S. at 615 (quoting Fed.R.Civ.P. 23(b)(3)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617. *See also* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Here, Plaintiff has met the superiority requirement. It is unlikely that putative class members will file a case under TCPA for $500-1500, and will have little interesting in controlling the prosecution of the TCPA claims. Moreover, the complex nature of this TCPA action lends itself to the efficiencies of class certification. It would inefficient to reinvent wheel on approximately 30,000 separate cases. Moreover, the courts would be substantially burdened by 30,000 separate suits – or even a fraction of that. As explained above, Plaintiff has shown that the class action appears to be manageable. Any difficulties in managing this class action are outweighed by the desirability of concentrating this matter in one litigation. Fed. R.. Civ. P. 23(b)(3)(C), (D).

**III.    Difficulties Managing Class and Modified Class Definition.**

Plaintiff has crafted a well thought-out methodology, based on using objective criteria (i.e. business records) to both identify class members and resolve legal and factual issues on a class-wide basis. If it becomes apparent later in this litigation that the class is not administratively feasible or individual issues predominate, the parties may file motions for appropriate relief, such as a motion to decertify or modify the class.[6] *See Davoll v.* Webb, 194 F.3d 1116 (10th Cir. 1999) (court may modify overbroad class definition instead of dismissing action); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) ("if, after the case proceeds, evidence is discovered that the questions of fact and law require burdensome individualized inquiry, this Court may revisit certification at that time."); *Stern v. DoCircle, Inc.,* 2014 WL 486262, at *9 (C.D. Cal. 2014) (court will consider future motions to decertify if individual issues come to predominate over common issues as case progresses); Wright and Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.) (alteration or modification of certification order appropriate at various stages of litigation); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015) ("a district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation."); *United Steel Workers Int'l Union v. ConocoPhillips Co.,* 593 F.3d 802, 807 (9th Cir. 2010) (district court "retains the flexibility to address problems with a certified class as they arise, including the ability to decertify.").

---

[6] For example, Plaintiff did not the feasibility of a historical or reverse phone look up, which appears necessary to identify class members. Defendants did not object, or state that this makes the class administratively infeasible. Plaintiff's fact witness testified by deposition that a reverse look up or historical phone search was possible. If it turns out that reverse look ups are not feasible in this case, the parties may file appropriate motions for relief.

17

The Court may *sua sponte* modify a class definition. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,* 302 F.R.D. 448, 463 (N.D. Ohio 2014), *citing Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions, so the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed."); *see also Schorsch v. Hewlett–Packard Co.,* 417 F.3d 748, 750 (7th Cir. 2005) (noting that "[l]itigants and judges regularly modify class definitions"); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision."). To make the class definition clear to potential class members, the Court modifies the class definition as follows:

> All persons who, since November 11, 2012, (1) called First National Bank Texas and First Community Bancshares, Inc., through their vendor GC services, and such call was coded "Bad/Wrong Number" and (2) were subsequently called again by First National Bank Texas and First Community Bancshares, Inc., on their cellular telephones through their vendor GC Services with an automatic telephone dialing system and such call was again coded as "Bad/Wrong Number." **Excluded are customers of First National Bank Texas or First Community Bancshares, Inc.**

(modification in bold). This modification does not create an improper "fail-safe" class.

**THEREFORE, IT IS ORDERED** that Plaintiff's Motion for Class Certification (**Doc. 74**) is **GRANTED** and the modified class above is **CERTIFIED** pursuant to Fed. R. Civ. P. 23(b)(3). This certification is without prejudice to Defendants bringing a motion to decertify the class should the progression of the case warrant it.

**IT IS FURTHER ORDERED** that Lemberg Law, LLC (Stephen Taylor) is appointed as class counsel pursuant to Fed. R. Civ. P. 23(g).

**IT IS FURTHER ORDERED** that Plaintiff's counsel submit a proposed plan for class notice to Defendants. The parties shall then either jointly submit a proposed notice to the Court for approval, or Plaintiff shall file an opposed motion for approval of notice.

**IT IS FINALLY ORDERED** that Defendants' Motion to Strike Affidavit **(Doc. 103)** is **DENIED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE